

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 23, 2025

**BY ECF**

The Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Gregory Gumucio*, 23 Cr. 595 (JPC)

Dear Judge Cronan:

The Government respectfully submits this letter in advance of the June 30, 2025 sentencing of Gregory Gumucio. Given the defendant's participation and leadership in a years-long criminal tax conspiracy that deprived the United States Government of more than two million dollars, the Government respectfully submits that the Court should impose a sentence within the Stipulated Guidelines Range of 57 to 60 months imprisonment. Such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.   Offense Conduct**

Gumucio, the founder, CEO and de facto leader of Yoga to the People ("YTTP"), started YTTP in or about 2006 in the East Village, and operated YTTP until about 2020. YTTP claimed to be built on the idea that yoga should be affordable and accessible, *i.e.*, yoga for everyone. YTTP's classes were generally donation-based, *i.e.*, yoga students could pay whatever they could afford, including nothing. YTTP's public website included its "Mantra," which claimed, among other things, that there would be "no ego," "No glorified teachers," and "no pedestals"; that "This yoga is for everyone"; and that "This power is for everyone. Yoga to the People. All bodies rise." (Presentence Report ("PSR") ¶ 16).

Over the years, and with the assistance of Gumucio's co-defendants, Michael Anderson and Haven Soliman, YTTP expanded throughout New York City and the country. Ultimately, YTTP had at least approximately 20 yoga studios or affiliated entities, including yoga studios in various New York City locations (*e.g.*, Chelsea, Brooklyn, Queens, and the Upper West Side) as well as in California, Colorado, Arizona, Florida, and Washington State. (PSR ¶ 18). YTTP also had a teacher training program which earned substantial income from aspiring yoga teachers. In addition, YTTP had an international presence, such as in Spain and Israel. YTTP became a multimillion-dollar business, generating gross receipts of nearly $20 million—on a conservative estimate—over the course of its existence. (PSR ¶ 20).

Notwithstanding YTTP's financial success, YTTP never filed a corporate tax return. (PSR ¶ 11). Gumucio and his co-defendants evaded paying personal income taxes for nearly a decade. From 2012 to 2020, Gumucio himself made millions of dollars in income from YTTP, but paid not a dime in income taxes.[1] At the same time, Gumucio enjoyed an extravagant lifestyle, which included foreign travel, expensive meals and clothing, and NFL season tickets. (PSR ¶¶ 48-49). And while failing to pay taxes, Gumucio represented that he made hundreds of thousands of dollars in real estate applications and in representations to banks. In fact, in one instance, Gumucio provided a fabricated tax return in connection with a real estate application. (PSR ¶ 50-53).

YTTP, at Gumucio's direction, took several measures to evade or facilitate the evasion of taxes. For example, YTTP accepted yoga students' payments in cash. This cash was collected in tissue boxes during classes, and for many years, taken to Gumucio's apartment in Manhattan where it was "stacked," counted, and stored in a guitar case. (PSR ¶ 32). In addition, YTTP discouraged use of credit cards and did not provide tax forms to its employees or contractors—and in some instances, refused to do so. (PSR ¶ 31). YTTP also used nominee companies to disguise the defendants' ownership and control of YTTP entities (PSR ¶ 33).

## II. Procedural History and the Applicable Guidelines Range

Gumucio was arrested on a complaint on August 24, 2022. He consented to the filing of a superseding information (the "Information") on November 16, 2023, which charged him with conspiracy to defraud the Internal Revenue Service ("IRS"), from at least 2012 through 2020. (Dkt. 149). On October 4, 2024, Gumucio pleaded guilty to the Information pursuant to a plea agreement with the Government.

In that plea agreement, the parties stipulated that the base offense level was 22 because the tax loss in the conspiracy was $2,050,038. The parties further stipulated that the offense level was increased by two leaves because the involved sophisticated means and because the defendant was a leader of the criminal activity. Factoring acceptance of responsibility, the parties stipulated that the total offense level was 25. The parties further agreed that Gumucio was in Criminal History I; this resulted in a guidelines range of 57 to 71 months' imprisonment, which became 57 to 60 months' imprisonment (the "Stipulated Guidelines Range") in light of the statutory maximum penalty for the count of conviction.

The Probation Department arrived at the same Guidelines calculation as the parties.

---

[1] The charts contained in paragraph 40 of the PSR were accurate at the time of the Complaint and concern tax years 2015 to 2020. At the time of the plea, the parties agreed that the aggregate tax deficiency is $1,018,068 for tax years 2012 to 2020 and the penalty is $763,551. (PSR, at 4, n.1). In addition, the total interest owing as of June 30, 2025 is $947,788.10. The defense has no objection to using these numbers in lieu of the "Tax Due and Owing" charts in paragraph 40 of the PSR.

### III. The Appropriate Sentence

#### A. Applicable Law

The Sentencing Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B. The Defendant's Sentencing Position

The defendant asks this Court for a five-year probationary sentence, with a period of home detention, citing the defendant's difficult childhood, his remorse, and his ongoing rehabilitation.

#### C. The Probation Office's Position

Probation recommends a sentence of 48 months' imprisonment.

The Honorable John P. Cronan
June 23, 2025
Page 4 of 6

### D. The Court Should Impose a Sentence Within the Stipulated Guidelines Range

A sentence of within the Stipulated Guidelines Range of 57 to 60 months' imprisonment is appropriate and no greater than necessary to provide just punishment and afford adequate deterrence.

The defendant's participation in this conspiracy was a serious crime that warrants substantial punishment. This conspiracy deprived the U.S. Government of over two million dollars in tax revenue. It persisted for years. It involved sophisticated means. And throughout this scheme, Gumucio was its leader. Accordingly, the seriousness of the crime and the need for just punishment support a sentence within the Stipulated Guidelines Range.

A sentence within the stipulated guidelines range is also necessary for specific deterrence. The defendant began to commit the instant offense when he was in his 50s—well past the age of maturity. While the defendant claims in his sentencing submission that he had turned his life around, he was actively involved in a sophisticated tax crime that lasted for many years. And there can be no dispute that Gumucio's involvement in the offense was willful—he even submitted a fabricated tax return in 2016, several years into the conspiracy.

The Court should also factor Gumucio's prior criminal convictions. They are admittedly old and distant, but Gumucio served substantial time in prison for those offenses. Unfortunately, those past periods of incarceration did not deter Gumucio from committing the instant offense, which lasted for eight years, and which Gumucio began to commit in his 50s. The Court cannot be assured that Gumucio will not reoffend, and a substantial incarceratory sentence is accordingly necessary for specific deterrence and to protect the public from the defendants' crimes.

General deterrence is also a critical concern in criminal tax cases. As the Sentencing Commission explained:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, *deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.*

U.S.S.G. ch. 2, pt. T, introductory cmt. *See, e.g., United States v. Zukerman*, 897 F.3d 423, 429 (2d Cir. 2018) (general deterrence "has a particularly important role" due "to the significant resources required to monitor and prosecute tax crimes," which "cost the government hundreds of billions of dollars annually"). Thus, to provide adequate general deterrence, sentences for multi-year, multimillion-dollar tax frauds—like this one—must be substantial. Indeed, this country's tax system—which depends largely on voluntary compliance by everyone, regardless of wealth—

The Honorable John P. Cronan
June 23, 2025
Page 5 of 6

would crumble if those owing taxes believed they could cheat with impunity or that the sanction they would face when caught would not be significant. Accordingly, general deterrence in cases like this is essential to the orderly and fair administration of our tax system. *See also United States v. Johnson*, No. 16-CR-457-1 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018) ("The need for general deterrence is particularly acute in the context of white-collar crime."); *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."); *United States v. Stein*, No. 09-CR-377, 2010 WL 678122, at *3 (E.D.N.Y. Feb. 25, 2010) ("Persons who commit white-collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed."); *United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Francesco, Galbiati & Vertova, *The Deterrent Effects of Prison: Evidence From a Natural Experiment*, 117 J. OF POLITICAL ECON. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

In his sentencing submission, Gumucio points to a number of mitigating circumstances, which the Government does not dispute. However, a non-incarceratory sentence would thwart the goals of sentencing. It would fail to account for the seriousness offense and undermine the goals of specific and general deterrence. Accordingly, considering the seriousness of Gumucio's crime and the significant need for specific and general deterrence, the Government submits that a sentence within the Stipulated Guidelines Range is nonetheless sufficient, but no greater than necessary, to serve the purposes of sentencing.

The Honorable John P. Cronan
June 23, 2025
Page 6 of 6

### IV.     Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range would be reasonable and appropriate in this case.[2]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:     /s/
       Rushmi Bhaskaran
       William C. Kinder
       Assistant United States Attorneys
       (212) 637-2439 / 2394

Cc: Marne Lenox, Esq. (by ECF)

---

[2] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).